UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **5876 57th DRIVE, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 13-5012** |
| **LUNDY ENTERPRISES, LLC,** <br> **DONALD PAUL DESHON, TRUSTEE OF** <br> **THE DONALD PAUL DESHON LIVING** <br> **TRUST, AMENDED AND RESTATED** <br> **AUGUST 29, 2000, JOHN BURNS,** <br> **TRUSTEE OF THE JOHN DAMIAN BURNS** <br> **1996 LIVING TRUST, AMENDED AND** <br> **RESTATED AUGUST 29, 2000,** <br> **LARRY LUNDY, MARILYN LUNDY,** <br> **AND HAROLD W. LUNDY** | **SECTION "C" (3)** |

**ORDER AND REASONS**

Before the Court are two motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), one by Lundy Enterprises, LLC ("Lundy Enterprises"), Larry Lundy, Marilyn Lundy, and Harold W. Lundy (collectively, the "Lundy Defendants'") and another filed by Donald Paul Deshon, trustee of the Donald Paul Deshon Living Trust, Amended and Restated August 29, 2000 ("Deshon") and John Burns, Trustee of the John Damian Burns Living Trust, Amended and Restated August 29, 2000 ("Burns"). Rec Docs. 14 & 17. Both motions are opposed by 5876 57th Drive, LLC ("Plaintiff"). Having considered the record, the memoranda of counsel, and the law, the Court rules as follows.

**I. BACKGROUND**

This diversity case arises out of the sale of a property located at 3500 Kabel Drive, New Orleans, Louisiana by Deshon and Burns to Plaintiff. Rec. Doc. 1, pp. 3-4. At the time of the sale, the property was operated as a Pizza Hut. Lundy Enterprises possessed both a lease in the property

1

and the rights necessary to operate a Pizza Hut restaurant at this location. *Id.* at p. 10. This lease was assigned to Plaintiff at the same time as the transfer. *Id.* In connection with the sale, Harold Lundy, on behalf of Lundy Enterprises, executed an estoppel certificate, certifying that the company currently had the authority to operate Pizza Hut restaurants on the property. *Id.* Unbeknownst to Plaintiff, Lundy Enterprises was involved in a dispute with Pizza Hut, Inc. at the time of the sale over the termination of Lundy Enterprises' rights to operate the company's restaurants. *Id.* at pp. 5-8. Shortly after the sale of the property to Plaintiff, Lundy Enterprises' rights to operate Pizza Hut restaurants were revoked and the company ceased to operate a Pizza Hut restaurant on the Property. *Id.* at p. 8. The Lundy Defendants have failed to pay any rent owed to Plaintiff under the lease agreement assigned to Plaintiff. *Id.* at pp. 10-11.

The Court's reading of Plaintiff's complaint indicates five claims: (1) breach of the lease against Lundy Enterprises, Rec. Doc. 1, pp. 12-13; (2) bad faith, fraud and inaction and conspiracy against Lundy Enterprises, Larry Lundy, Harold Lundy and Deshon and Burns, *Id.* at pp. 13-15; (3) intentional and negligent misrepresentations against Lundy Enterprises, Larry Lundy, Harold Lundy and Deshon on Burns and detrimental reliance, *Id.* at pp. 15-17;[1] (4) strict liability against Lundy Enterprises, *Id.* at pp. 17-18; and (5) rescission of the relatively null sale due to error and/or fraud

---

[1] Although Plaintiff's complaint separates bad faith and fraud claims from claims of intentional and negligent misrepresentation and detrimental reliance, the Court construes the bad faith and fraud allegations as grounds for pecuniary damages rather than as separate claims by themselves. Rec. Doc. 13-15 ("[Defendants] are liable for both pecuniary and non-pecuniary losses as a result of their fraudulent actions, statements, silence and inactions."); *see also Roba, Inc. v. Courtney*, 2009-0508, p. 10 (La. App. 1 Cir. 8/10/10); 47 So. 3d 500, 508 (citing La. Civ. Code Art. 1997); *see infra* Section E. This view is supported by Plaintiff's assertion in opposition that Plaintiff's fraud claims "flow from obligations assumed by the Defendants pursuant to various contracts, including the Purchase Agreement, the Lease and the Estoppel Certificate. Rec. Doc. 27, p. 9.

against Deshon and Burns, alternatively against other defendants., *Id.* at 18-20. To the extent that this summary of claims differs from that set forth by the Lundy Defendants in conjunction with their motion, those arguments will not be addressed. Red. Doc. 17-1, at 6. The Lundy Defendants and Deshon and Burns have moved to dismiss the claims of fraud, inaction, bad faith, and conspiracy, along with claims of intentional and negligent misrepresentation and detrimental reliance. Deshon and Burns have also moved to dismiss the claim for rescission.

## II. LAW AND ANALYSIS

### A. Standard of Review

To review a Rule 12(b)(6) motion to dismiss, a court construes a complaint liberally in favor of the plaintiff and accepts all well-pleaded facts as true. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) (citations omitted). A plaintiff does not have to meet a standard of "heightened fact pleading of specifics" in order to survive a 12(b)(6) motion, but must plead sufficient facts "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Generally, if a motion to dismiss includes documents outside the pleadings that are not excluded by the court, the motion should be considered as one for summary judgment; however, if the documents are referred to in the plaintiff's complaint and central to the plaintiff's claim, a court may consider the documents for the purposes of a motion to dismiss. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007).

### B. The Individual Lundy Defendants

The Lundy Defendants have moved to dismiss all claims against Marilyn, Harold, and Larry Lundy due to their lack of contact with Plaintiff and, with respect to Marilyn and Larry Lundy, due to their lack of connection to the estoppel certificate. Rec Doc. 17-1, p. 9. Additionally, in its reply,

3

the Lundy Defendants point to the lack of a legal basis for Marilyn, Harold, and Larry Lundy's individual liability as members of a limited liability corporation. Rec. Doc. 31, p. 2. The Louisiana statute applicable to the liability of members of a limited liability company provides, "no member, manager, employee, or agent of a limited liability company is liable in such capacity for a debt, obligation or liability of the limited liability company." La. Rev. Stat. Ann. § 1320 (1993). The same statute further provides, "a member, manager, employee, or agent of a limited liability company is not a proper party to a proceeding by or against a limited liability company." Id. However, the statute then qualifies the general rule: "Nothing in this chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him . . . or other negligent or wrongful act by such person . . . ." Id.

The Louisiana Supreme Court recently elucidated the meaning of this statute and the exception to the general rule that members of limited liability companies are sheltered from liability in *Ogea v. Merritt*. 2013-C-1085 (La. 12/10/13); 2013 WL 6439355. The court began with the proposition that:

> the law considers an LLC and the member(s) comprising the LLC, as being wholly separate persons. However, in narrowly defined circumstances, when individual member(s) of . . . an LLC mismanage the entity or otherwise thwart the public policies justifying treating the entity as a separate juridical person, the individual member(s) have been subjected to personal liability for obligations for which the LLC would otherwise be solely liable.

*Id.* at *6. The Court further provided an initial two-part evaluation of a claim against the members of an LLC: first the plaintiff must have a legal cause of action against and defendant, and second, the cause of action must arise from fraud, breach of professional duty, or other negligent or wrongful act. *Id.* at *10. In the instant case, the only categories under which

4

Plaintiff's claims might fall would be fraud or negligent or wrongful act. The Louisiana Civil Code defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." *Id.* at \*11 (quoting La. Civ. Code Ann. art. 1953). With respect to the individual Lundys' alleged involvement, the claim of fraudulent misrepresentation would fit the Civil Code's definition of fraud. The exception in La. Rev. Stat. Ann. § 12:1320 exists due to the lack of justification to "treat[ ] the entity as a separate juridical person" and serves to impose "personal liability for obligations for which the LLC would otherwise be solely liable." *Ogea*, 2013 WL 6439355, at \*6. Because falling within an exception to the general rule of restricting the liability of LLC members causes the separation between the entity and its members to extinguish, it seems that each of the individual Lundy defendants may be held liable for a fraud committed by Lundy Enterprises. The Supreme Court of Louisiana concluded that "with no record evidence of fraud, there is nothing to trigger the fraud exception . . . by which [member] could be held personally liable *notwithstanding* that he was a member of the LLC." *Ogea* 2013 WL 6439355, at \*12 (emphasis added). In cases like *Ogea* where the contracting parties have regular in-person communication, a court may easily point to acts committed by individual members of the LLC. In the present case, Lundy Enterprises made potentially fraudulent representations through an intermediary and, as the Lundy Defendants note, had no direct contact with Plaintiff. At this early stage in the proceedings, it is too early to determine the involvement or knowledge of the individual Lundy Defendants in executing the estoppel certificate other than through their positions as officers and members of Lundy

Enterprises. Thus, the motion to dismiss the fraud and negligent misrepresentation claims against Marilyn, Larry, and Harold Lundy is DENIED.

### C. Prescription

Because the issue of prescription is integral to both motions to dismiss, the Court will consider this issue separately from the others. Both groups of defendants have moved to dismiss Plaintiff's conspiracy claim and Plaintiff has not opposed either motion as to that claim. The motions to dismiss all claims of conspiracy against the defendants are GRANTED. Additionally and as discussed above, the Court construes Plaintiff's complaint as alleging fraud and bad faith separately from misrepresentation and detrimental reliance as a means to establish Plaintiff's right to non-pecuniary damages rather than as a separate claim. However, to the extent that Plaintiff attempts to allege a claim of fraud that is not related to seeking non-pecuniary damages for bad faith breach of contract, misrepresentation, or detrimental reliance, the motions to dismiss are GRANTED as to all defendants as delictual actions subject to the one-year prescriptive period.

Under Louisiana Civil Code article 3492, prescription for delictual actions runs from the date injury or damage is sustained. La. Civ. Code Ann. art. 3492 (1992). Damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action. *Williams v. Sewerage & Water Bd. of New Orleans*, 611 So. 2d 1383, 1386 (La. 1993); *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La. 1993); *Aetna Cas. & Sur. Co. v. Stewart Const. Co., Inc.*, 00-CA-1332, p. 4 (La. App. 5 Cir. 2/28/01); 780 So.2d 1253, 1256-57. A personal action is subject to a ten-year prescriptive period. La. Civ. Code Ann.

art. 3499 (1983). Additionally, an action of annulment of a relatively null contract is subject to a five-year prescriptive period. La. Civ. Code Ann. art 2032 (1985).

Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed. *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). When prescription is evident on the face of the pleadings, however, "the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription . . . ." *Id.*; *Williams*, 611 So.2d at 1386. Louisiana law requires strict construction of its prescriptive statutes in favor of a litigant's day in court. *Wimberly v. Gatch*, 93-C-2361 (La. 04/11/94); 635 So.2d 206, 211; *Orthopaedic Clinic of Monroe v. Ruhl*, 34,700-CA, p. 4 (La. App. 2 Cir. 05/11/01); 786 So.2d 323, 328. It is undisputed by the parties that the damage allegedly caused by defendants was sustained more than one year from the date on which Plaintiff filed this action and that Plaintiff states in the complaint that it knew of the alleged wrongdoing well in excess of one year from the date of filing. The nature of the cause of action at issue must be determined before it can be decided which prescriptive term is applicable. *See Roche v. Jefferson Davis Elec. Coop., Inc.,* 2005-1009, p. 3 (La. App. 3 Cir. 2/1/06); 922 So.2d 759, 761.

Under Louisiana law, fraud claims may arise under theories of either contract or tort. *Clark v. Constellation Brands, Inc.*, 348 Fed. App'x 19, 22 (5th Cir. 2009). Whether or not the claim has prescribed will be determined by the nature of Plaintiff's claim—whether the claim sounds in tort or contract. "The classic distinction between damages 'ex contractu' and 'damages ex delicto' is that the former flows from the breach of a special obligation contractually assumed by the obligor, whereas the latter flows from the violation of a general duty owed to all persons."

*Roche*, 922 So.2d at 762 (quoting *Stephens v. Int'l Paper Co.*, 542 So.2d 35, 39 (La. App. 2 Cir. 1989)).

### i. Prescription of claims against Deshon and Burns

Deshon and Burns have moved to dismiss Plaintiff's "fraud and conspiracy claims" against them, citing generally to a large portion of the complaint including Plaintiff's claims of misrepresentation and detrimental reliance. Rec. Doc. 14-1, p. 5. The Court construes their motion on this issue as arguing that the Plaintiff's claims of misrepresentation, detrimental reliance, fraud, and conspiracy have prescribed. As discussed above, the Court construes Plaintiff's complaint as alleging fraud and bad faith separately from misrepresentation and detrimental reliance as a means to establish Plaintiff's right to non-pecuniary damages rather than as a separate claim. Plaintiff's conspiracy claim is also dismissed. The Court will consider the issue of prescription with respect to claims of detrimental reliance and misrepresentation. In their reply, Deshon and Burns argue that Plaintiff's claims of fraud and bad faith lack a connection to a specific obligation undertaken in the Purchase Agreement. Rec. Doc. 32-2, pp. 3-4. However, Louisiana law requires that courts distinguish between claims of misrepresentation and claims of detrimental reliance to determine the applicable prescriptive period. *See Clark v. Constellation Brands, Inc.*, 348 Fed. App'x 19, 22 (5th 2009); *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 487 (5th Cir. 2009). Having considered the arguments of the parties and the applicable law the court rules that Deshon and Burns's motion to dismiss Plaintiff's claims of intentional and negligent misrepresentation is DENIED, and Deshon and Burns's motion to dismiss Plaintiff's claim of detrimental reliance is GRANTED.

### 1. Intentional and negligent misrepresentation by Deshon and Burns

Plaintiff alleges that the Deshon Defendants intentionally and negligently misrepresented facts about the property sold to Plaintiff. Rec. Doc. 1, p. 15. This claim, Plaintiff argues, is not bound by the one-year prescriptive period applied under Louisiana law to tort actions, but is governed by the five-year prescriptive period applicable to the rescission of a contract. Rec. Doc. 27, p. 8. Plaintiff's rescission claim is based on the argument that it was fraudulently induced to purchase the Property and to assume the remaining term of the Lease Agreement between the Deshon Defendants and Lundy Enterprises, under the impression that the lessee would continue to operate a Pizza Hut there. Rec. Doc. 1, pp. 15-16. Under Louisiana law, fraud that vitiates consent to contract may consist of either a misrepresentation or an omission, but must be intentional. La. Civ. Code Ann. art. 1948; La. Civ. Code Ann. art. 1953. "A contract is relatively null when it violates a rule intended for the protection of private parties, as when a party . . . did not give free consent at the time the contract was made." La. Civ. Code Ann. art. 2031 (1984). Annulment[2] of a relatively null contract must be brought within *five years* from the time the ground for nullity was discovered. La. Civ. Code Ann. art. 2032 (1984) (emphasis added). In the instant case, Plaintiff's complaint requests both damages and rescission of the Purchase Agreement. Rec. Doc. 1, p. 21. Plaintiff's request for rescission arises under a contractual theory of misrepresentation and the statutory provisions discussed above.

---

[2]Plaintiff calls for rescission of the Purchase Agreement. Courts applying Louisiana law have used the terms "rescission" and "annulment" interchangeably. *See, eg., Sound/City Recording Corp. v. Solberg*, 443 F. Supp. 1374, 1380 (W.D. La. 1978) ("Article 2221 [of the 1870 Civil Code, now Article 2032] concerns rescission due to a lack of capacity or due to a vice of consent, nullifying a contract as if it never existed.")

Reading the complaint against Deshon and Burns as whole, the court finds that it is based on Plaintiff's seeking of rescission of the contract by reason of Plaintiff's vitiated consent because of fraud. The five-year prescriptive period for rescission is appropriate.

### 2. Plaintiff's detrimental reliance on misrepresentations made by Deshon and Burns

In the alternative, Plaintiff asserts a claim of detrimental reliance on the misrepresentations made by or omissions of the Deshon Defendants. Rec. Doc. 1, p. 16. Louisiana courts differentiate detrimental reliance claims from claims of misrepresentation. With respect to the applicable prescriptive period for a claim of detrimental reliance, the issue is whether the claim derives from a specific promise made or a duty generally owed to anyone in Plaintiff's position. *See Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 487 (5th Cir. 2009). The Fifth Circuit described the distinction between such a specific promise and general duty, saying that "*non* feasance in the performance of an obligation creates a cause of action that prescribes in ten years, *mis* feasance in the performance of a contract for professional services . . . gives rise to a claim in tort, which prescribes in one year." *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 479 (5th Cir. 2002). Plaintiff has not asserted that Deshon or Burns promised that the lease and franchise rights would continue. In fact, the Purchase Agreement merely requires the deliverance of an estoppel certificate, executed by the tenant of the Property, asserting the material terms of its lease agreement with Deshon and Burns. Rec. Doc. 1-14, p. 3. Any claim Plaintiff may have against Deshon and Burns for neglecting to disclose the imminent termination of their tenant's franchise rights would arise out of a general duty to provide accurate information to Plaintiff under the circumstances. Because this general duty is only actionable in tort, the one-year time bar applies.

### ii. Prescription of claims against the Lundy Defendants

The Lundy Defendants have moved to dismiss Plaintiff's "fraud, conspiracy, and misrepresentation claims" for prescription. Rec. Doc. 17-1, p. 16. As discussed above, the motion to dismiss the conspiracy claim remains unopposed and is dismissed. While the Lundy Defendants refer to Plaintiff's claims fairly generally in their motion to dismiss, in reply, they hastily conclude that Plaintiff only opposes their motion to dismiss "its fraud claim" and do not address whether the misrepresentation and detrimental reliance claims should be treated differently. Rec. Doc. 29-2, p. 7. However, Plaintiff characterizes vitiation of consent by misrepresentation and detrimental reliance as fraud and refers generally to those claims as "fraud claims" (as do both the Lundy Defendants and Deshon and Burns). Rec. Doc. 27, pp. 6-10. The misrepresentation and detrimental reliance claims against these defendants result from facts allegedly omitted from the estoppel certificate–that the rights to operate a Pizza Hut on the Property would soon be terminated. The Lundy Defendants' argument that the fraud claims have prescribed rests on the nonexistence of a contract between any of the Lundy Defendants and Plaintiff because: (1) the Estoppel Certificate is not a contract; and (2) if the Estoppel Certificate is a contract, the individual Lundy Defendants are not parties to that contract.[3] Rec. Doc. 29-2, pp. 7-9. For the reasons discussed below, the Lundy Defendants' motion to dismiss claims of misrepresentation and detrimental reliance by reason of prescription is DENIED.

### 1. Misrepresentation claims against the Lundy Defendants

---

[3]Because the Lundy Defendants' claim that Marilyn, Harold, and Larry Lundy should not be held liable individually affects more grounds for dismissal besides the issue of prescription, their individual liability will be considered separately.

Unlike the Court's consideration of the complaint in relation to the Deshon and Burns Defendants, in this context, it would not be useful to look to the remedy requested by Plaintiff to determine the nature of its misrepresentation claim against the Lundy Defendants because the remedy of rescission is unavailable. However, Lundy Enterprises did obligate itself to provide certain information under the estoppel certificate. Rec. Doc. 1-15, pp. 1, 2. Had the company refrained from doing so or omitted any reference to franchise rights from the estoppel certificate, Plaintiff would have no claim of misrepresentation. The claim arises out of a specific contractual duty and sounds in contract rather than in tort. Therefore the Court finds that this claim sounds in contract and not in tort. Such a claim is subject to the ten-year prescriptive period.

### 2. Detrimental reliance claims against the Lundy Defendants

Again, whether the claim of detrimental reliance has prescribed depends on whether the misrepresentations made by the Lundy Defendants were made in connection with a specific promise or a general duty. *See Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 487 (5th Cir. 2009). The Fifth Circuit described the distinction between such a specific promise and general duty, saying that "*non* feasance in the performance of an obligation creates a cause of action that prescribes in ten years, *mis* feasance in the performance of a contract for professional services . . . gives rise to a claim in tort, which prescribes in one year." *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 479 (5th Cir. 2002) (finding a tort action where a duty arose from the nature of the relationship rather than from a contractual term). Lundy Enterprises created obligations when it represented and warranted facts about the lease and their franchise rights in relation to the lease. The estoppel certificate says, "Lessee warrants and represent that it *currently* has all licenses, permits and other governmental authorizations necessary to operate the

Pizza Hut franchise . . . ." Rec. Doc. 1-15, p. 1 (emphasis added). The certificate was signed on November 11, 2010, four months after Lundy Enterprises signed a Letter of Intent with Pizza Hut, which anticipated the Pizza Hut's purchase of all of Lundy Enterprises' Pizza Hut related assets and the subsequent termination of Lundy Enterprises' franchise rights. Rec. Doc. 1-15, p. 2, Rec. Doc. 1-11, pp. 8-9. One month after the sale and two months after the Estoppel Certificate was signed, Pizza Hut terminated its agreement to purchase Lundy Enterprises' assets along with its franchise rights. Rec. Doc. 1-12, p. 1. It is possible that the Lundy Defendants knew that Pizza Hut would soon terminate their franchise rights without buying the related assets when the Estoppel Certificate was executed. The Court finds that Plaintiff's claim of misrepresentation with respect to Lundy Enterprises' representations reaches beyond the level of omission alleged against the Deshon Defendants. While the Deshon Defendants were under no specific contractual obligation to inform Plaintiff of the franchise status, the Lundy Defendants undertook the obligation to provide complete and accurate information about that status. Such an obligation would certainly cover omissions as well as misrepresentations. So while technically true, if the Lundy Defendants did expect their franchise rights to terminate soon, the warranty would at least be misleading.

### D. Failure to adequately plead fraud under Rule 9(b) of the Federal Rules of Civil Procedure

Complaints alleging fraud must comply with the particularity requirement under Rule 9(b) of the Federal Rules of Civil Procedure. To comply with Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The objectives of Rule 9(b) are to ensure a complaint "provides defendants with fair notice of the

13

plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike suits, and prevents plaintiffs from filing baseless claims then attempting to discover unknown wrongs." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009). "Rule 9(b) requires, at a minimum, that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.,* 625 F.3d 262, 266 (5th Cir. 2010) (citation omitted). Rule 9(b) is applied with "bite" and "without apology," but it "ought not be read to insist that a plaintiff plead the level of detail required to prevail at trial." *Grubbs*, 565 F.3d at 185-86, 189.

In the instant case both the Lundy Defendants and Deshon and Burns argue that Plaintiff has failed to state a claim of fraud with sufficient particularity to satisfy Rule 9(b) of the Federal Rules. Rec. Doc. 14-1, pp. 6-9; Rec. Doc. 17-1, pp. 7-10. As an initial matter, both groups of defendants contend that the Plaintiff may not rely on the estoppel certificate, signed by Lundy Enterprises and provided by Deshon and Burns, to plead a case of fraud against them. Rec. Doc. 14-1, p. 7; Rec. Doc. 17-1, 9-10. Defendants argue that the content of the estoppel certificate was true, and while Deshon and Burns argue that the representations made in the estoppel certificate were made by the Lundy Defendants, the Lundy Defendants argue the reverse. *Id.* Plaintiff makes clear that it is not contending that what the estoppel certificate attested to – that the lessor was currently permitted to operate a Pizza Hut restaurant on the property – was fraudulent. Rec. Doc. 27, pp. 11-13; Rec. Doc 1, p. 14. Rather, Plaintiff's claim is that both parties knew that the rights to operate a Pizza Hut on the property were likely, if not certain, to terminate before the sale of the property and the issuance of the estoppel certificate. *Id.* Plaintiff has clearly stated a claim that it was misled into purchasing the property due to Defendants' lack of disclosure of

known facts. Whether or not the estoppel certificate imposes liability on the Lundy Defendants or Deshon and Burns is an issue more suitable for determination on a motion for summary judgment and is inappropriate in this early stage of the proceedings.

### i. Failure to state a fraud claim against the Lundy Defendants

The Lundy Defendants claim that they may not be held liable for fraud because they had no connection with Plaintiff. Rec. Doc. 17-1, 8-9. The Court finds this argument unpersuasive. It may be true that the Lundy Defendants did not personally negotiate with Plaintiff. However, Lundy Enterprises, through Harold Lundy, did issue an estoppel certificate. The company certified that it could in fact operate a Pizza Hut Restaurant in a property built in conformity with the trade dress of a Pizza Hut restaurant and operated as such since the 1970s and sold to Plaintiff for over five hundred thousand dollars. The fact that this representation was passed through an intermediary does not absolve Lundy Enterprises of liability for withholding material information, if it is found that it did so. The liability of the individual Lundy Defendants will depend on whether they may be held liable for the acts of the company as discussed above.

### ii. Failure to state a fraud claim against Deshon and Burns

Similarly, Deshon and Burns claim they are not liable for any misrepresentations or omissions by the Lundy Defendants through the estoppel certificate and allege that they had no knowledge of the court and arbitral proceedings occurring between Lundy Enterprises and Pizza Hut. Rec. Doc. 14-1, pp. 8-9. While it may be that Deshon and Burns remained unaware that Lundy Enterprises was likely to lose its license to operate a Pizza Hut on the property, this presents a factual issue best left to the summary judgment stage of this litigation, after sufficient discovery has been conducted.

This Court finds that Plaintiff has satisfied its burden to prove the "who, when, where and how" requirements under Rule 9(b). Plaintiff alleges that the Lundy Defendants and Deshon and Burns committed fraud by executing or providing the estoppel certificate. The fact that Plaintiff has not alleged that either group of defendants actively misrepresented the precarious state of the franchise is not sufficient to defeat a claim of fraud and to grant the defendants' motions to dismiss. Plaintiff's claim rests on its argument that all of the defendants knew that the property would likely no longer be permitted to operate as a Pizza Hut and chose to disclose only that Lundy Enterprises *currently* held the rights to operate it as such. Rec. Doc. 27, pp. 11-13. Thus, Plaintiff sufficiently alleges a claim a fraud. The motions to dismiss for failure to adequately plead fraud are DENIED.

### E. Failure to State a Claim that the Lundy Defendants[4] are Bad Faith Obligors

The Lundy Defendants argue that Plaintiff has failed to state a claim that Harold Lundy, Larry Lundy, and Lundy Enterprises are bad faith obligors for two reasons: 1) Harold Lundy and Larry Lundy did not enter into a contract with Plaintiff and therefore have not breached a contract with Plaintiff; and 2) Lundy Enterprises entered into the lease agreement with Deshon and Burns in good faith, in spite of their later breach. Rec. Doc. 17-1, pp. 13-14. As the issue of the individual liability of Harold and Larry Lundy has already been discussed, the Lundy Defendants' first argument shall not be considered at this stage. With respect to the second argument, the Court finds that the Lundy Defendants mischaracterize Plaintiff's claim that they were bad faith obligors.

---

[4] Plaintiff also claims that Deshon and Burns acted in bad faith in their sale of the Property to Plaintiff. Rec. Doc. 1, p. 13. As Deshon and Burns do not address this issue in their motion to dismiss or in reply, the Court will not consider this issue with respect to those defendants.

Louisiana courts describe a bad faith obligor as a contracting party who "intentionally and maliciously fails to perform an obligation." *Roba, Inc. v. Courtney*, 2009-0508, p. 10 (La. App. 1 Cir. 8/10/10); 47 So. 3d 500, 508 (citing La. Civ. Code Art. 1997). Bad faith is "a designed breach of [a contract] from some motive of interest or ill will." *Id.* Whether or not a party in breach is a bad faith obligor determines whether or not damages for unforeseeable losses caused by the breach may be awarded. *Id.* Plaintiff's claim that Lundy Enterprises acted in bad faith when it failed to perform its obligations immediately upon assignment of the lease to Plaintiff is clearly set out in its complaint as well as in its opposition. Plaintiff claims that Lundy Enterprises knew that it would no longer be allowed to operate a Pizza Hut on the property, executed a carefully-worded estoppel certificate, and strategically waited until the property was sold to default on the newly assigned lease. Rec. Doc. 27, p. 4; Rec. Doc. 1, pp. 10-11. If these allegations are true, Lundy Enterprises would most certainly be found to be a bad faith obligor, as they would clearly show a designed breach of contract as anticipated by the statute. The Lundy Defendants mischaracterize the claim as one which requires their bad faith upon *entering* the lease with Deshon and Burns. However, Louisiana courts require bad faith in the *performance* of the contract, not bad faith upon entering into the contract. *Roba*, 47 So. 3d at 508 ("An obligor is in bad faith if he intentionally and maliciously *fails to perform* his obligation." (emphasis added)). The Lundy Defendants' motion to dismiss Plaintiff's claim that they are bad faith obligors is DENIED.

### F. Rescission of the Contract of Sale between Deshon and Burns and Plaintiff

Finally, Defendants Deshon and Burns argue against Plaintiff's claim of rescission of the Purchase Agreement. The basis of this argument is that Plaintiff's alleged cause for entering the

17

agreement—that a longstanding franchise agreement was in place—was unknown to Deshon and Burns. Rec. Doc. 14-1, p. 11. Plaintiff's complaint argues that the contract was vitiated by error, or, in the alternative, fraud committed by Deshon and Burns or fraud committed by third parties, of which Deshon and Burns knew or should have known. Rec. Doc. 1, pp. 19-20. Pursuant to the Louisiana Civil Code, "[c]onsent [to contract] may be vitiated by error, fraud, or duress." La. Civ. Code art. 1948 (1985). The Code also provides that "[e]rror vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. Civ. Code art. 1949 (1985). In the case of fraud, the Code provides: "Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent." La. Civ. Code art. 1955 (1985). Finally, with respect to fraud committed by third parties, the Louisiana Civil Code says, "[f]raud committed by a third person vitiates the consent of a contracting party if the other party knew or should have known of the fraud." La. Civ. Code art. 1956 (1985). The dispute between the parties is over (1) whether or not Deshon and Burns knew that the franchise agreement was a substantial or sole cause of the contract and (2) whether Deshon and Burns knew or should have known that a third party had committed a fraud with respect to that cause. Rec. Doc. 14-1, pp. 11-12. As these disputes present issues of fact, they may not be resolved on a motion to dismiss. The Court finds that Plaintiff has adequately pleaded a case for rescission of the contract for purposes of a 12(b)(6) motion. The defendants' motion to dismiss is DENIED.

The Court adds that this case is one of the most egregious instances of parties taking total advantage of a trusting purchaser to his substantial detriment. While all the facts have yet to be developed, if the Plaintiff's allegations turn out to be true, these defendants should be ashamed.

Accordingly,

IT IS ORDERED that the motion to dismiss filed by the defendants is PARTIALLY GRANTED as to the conspiracy claim against both sets of defendants, the tort-based fraud against all defendants, and the detrimental reliance claim against Deshon and Burns, and PARTIALLY DENIED as to all other claims.  In so ruling, the Court finds amendment with regard to the dismissed claims would be futile.

New Orleans, Louisiana this 25th day of March, 2014.

                                            **HELEN G. BERRIGAN**
                                      **UNITED STATES DISTRICT JUDGE**