UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| 5876 57th DRIVE, L.L.C. | CIVIL ACTION |
| VERSUS | NO. 13–5012 |
| LUNDY ENTERPRISES, L.L.C., ET AL | SECTION "S" (5) |

ORDER AND REASONS

**IT IS HEREBY ORDERED** that the Motion for Partial Summary Judgment for Breach of Lease Against Defendant, Lundy Enterprises, LLC, filed by plaintiff, 5876 57th Drive, LLC (Doc. #63), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Strike filed by plaintiff, 5876 57th Drive, LLC (Doc. #73), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment filed by defendant, Lundy Enterprises, LLC (Doc. #81), is **DENIED**.

BACKGROUND

This matter is before the court on cross-motions for partial summary judgment filed by plaintiff, 5876 57th Drive, LLC, and defendant, Lundy Enterprises, LLC. 5876 argues that it is entitled to summary judgment on its breach of the lease claim against Lundy Enterprises because Lundy Enterprises violated the lease agreement by abandoning the property and failing to meet its obligations under the lease. Lundy Enterprises argues that it is entitled to summary judgment on 5876's breach of the lease claim because Lundy Enterprises did not abandon the property and 5876 illegally evicted Lundy Enterprises without placing it in formal default under the terms of the lease or Louisiana law. Also before the court is plaintiff's motion to strike an exhibit attached to Lundy Enterprises's opposition to 5876's motion for summary judgment.

This matter concerns a lease on property located at 3500 Kabel Drive, New Orleans, Louisiana. A Pizza Hut restaurant was operated on that property since the 1970's. For a significant part of that time, the 3500 Kabel Drive Pizza Hut was a part of a large group of franchised Pizza Hunt restaurants owned and/or operated by Lundy Enterprises and other entities owned by Larry Lundy and his family. In 2006, M-Lund Enterprises, L.L.C., one of the Lundy family entities, sold the building located at 3500 Kabel Drive to Donald Paul Deshon, Trustee of the Donald Paul Deshon Living Trust, Amended and Restated August 29, 2000 ("Deshon"), and John Burns, Trustee of the John Damian Burns 1996 Living Trust, Amended and Restated August 29, 2000 ("Burns"). At the time of the sale, Deshon and Burns leased the property back to M-Lund. Larry Lundy executed the lease on behalf of M-Lund. M-Lund then assigned the lease to Lundy Enterprises, which was managed by Larry Lundy.

The lease, which became effective on October 30, 2006, had an initial term of 20 years with four options for the lessee to renew the lease for five year terms. Rent was due on the first of each month. The lease also required the lessee to pay all public utilities and taxes;[1] to maintain commercial general liability insurance, all-risks insurance and business interruption insurance that

---

[1] Section 3.3 of the lease states:

Additional Charges. Lessee and Lessor agree that the Minimum Rental accruing under this Lease shall be net to Lessor and that all taxes, costs, common area maintenance fees, expenses and charges of every kind and nature ("Additional Charges") in relation to the Premises . . . which may arise or become due during the Term of this Lease, shall be paid by Lessee, and Lessee shall indemnify and save harmless Lessor from and against such Additional Charges. In the event of non-payment of additional charges hereunder, Lessor shall have all the rights and remedies as provided in the case of nonpayment of Minimum Rental. . .

covered the lessee and the lessor;[2] and, to maintain the property in good order and condition.[3] The lease is assignable by both the lessor and lessee.

In 2009, Pizza Hut threatened to terminate Lundy Enterprises's franchise agreements. As a result, Pizza Hut and Lundy Enterprises entered into a valuation process to determine the fair market

---

[2] As to insurance coverage, the lease provides:

4.1 **Coverage**. During the Term of this Lease, Lessee, at its own cost and expense, shall:

    4.1.1    Keep the Improvements insured with an all-risk property insurance policy (such policy to include coverage for damage causes by hurricanes) in an amount sufficient to cover the cost of replacement of the Improvements (without deduction for depreciation), but excluding any earthquake insurance.

    4.1.2    Provide and keep in force comprehensive or commercial general liability insurance against claims for bodily injury, death or property damage occurring on, in or about the Premises in limits of not less than $1,000,000 per occurrence for personal injury or death and not less than $500,000 per occurrence for property damage. The policy shall name Lessor as an additional insured.

    4.1.3    [omitted]

    4.1.4    Provide and keep in force business interruption insurance which shall include rent insurance (and/or, as the case may require, use and occupancy insurance) in an amount not less than the then current Minimum Rental plus the estimated annual Additional Charges.

[3] Section 5.2 of the lease provides:

**Repairs and Maintenance.** Lessee shall, at all times during the Term of this Lease, at its own cost and expense, put, keep and maintain the Premises and the Trade Fixtures and Component Parts located on it in good order and condition, and subject to all applicable terms of Sections 5.3 and 5.8, shall make all necessary and desirable repairs, restorations and replacements thereof, structural and nonstructual, foreseen or unforseen (collectively, "Repairs"), and shall use reasonable precaution to prevent waste, damage or injury to or upon the Premises. Lessee also shall put, keep and maintain in good repair and free from dirt, snow, ice, rubbish and other obstructions or encumbrances, the sidewalks, parking areas, yards, plantings, gutters and curbs in front of and adjacent to the Premises.

value of the franchises and properties owned by Lundy Enterprises in an effort to determine whether the parties could negotiate a buy-out by Pizza Hut of all of Lundy Enterprises's Pizza Hut assets.

On July 29, 2010, Pizza Hut and Lundy Enterprises participated in mediation. A Settlement Agreement was reached wherein the parties agreed to submit the issue of fair market value to arbitration to determine how much, if anything, Pizza Hut would pay for Lundy Enterprises's assets. The Settlement Agreement also provided that Pizza Hut and Lundy Enterprises would execute an Asset Purchase Agreement by August 12, 2010, that would terminate all of Lundy Enterprises's franchise agreements with Pizza Hut. Pizza Hut reserved the right to terminate the Asset Purchase Agreement if the fair market value of the assets, determined by arbitration, was less that the total amount of encumbrances thereon.

In the summer of 2010, at the same time these events were unfolding between Lundy Enterprises and Pizza Hut, Deshon and Burns approached Michael Lynch, the sole member of 5876, about buying 3500 Kabel Drive. On September 14, 2010, 5876 entered into a purchase agreement with Deshon and Burns. Lynch received the a copy of the lease and due diligence reports. However, he was not informed of the ongoing issues between Lundy Enterprises and Pizza Hut, that Lundy Enterprises had already agreed that its franchise agreements would be terminated, or that Pizza Hut might not continue to operate a restaurant on the property.

On November 5, 2010, the sale was completed, and Deshon and Burns assigned the lease to 5876. On November 11, 2010, Deshon and Burns produced to 5876 an Estoppel Certificate in which Lundy Enterprises "warrants and represents that it currently has all licenses, permits and other governmental authorizations necessary to operate the Pizza Hut franchise located at the premises." The Estoppel Certificate was signed by Harold W. Lundy as President/CEO of Lundy Enterprises.

On December 1, 2010, Pizza Hut and Lundy Enterprises executed the Asset Purchase Agreement and an "Agreement Regarding Franchise Agreements," which terminated the franchise agreements. Pizza Hut granted Lundy Enterprises a license to temporarily operate Pizza Hut restaurants, including the one located at 3500 Kabel Drive.

Also on December 1, 2010, Lundy Enterprises's rent was due to 5876, but it was not paid. On December 7, 2010, Lynch sent a letter to Harold Lundy via facsimile stating that he was the new owner of 3500 Kabel Drive, the rent for December 2010 was not paid, and to wire the money to his bank account. On December 9, 2010, Lundy Enterprises paid the December 2010 rent via wire transfer.

On December 17-18, 2010, Pizza Hut and Lundy Enterprises attended the arbitration required by the Settlement Agreement. The fair market value of Lundy Enterprises's assets was determined to be $7,742,550, which was less than the encumbrances. On January 2, 2011, Pizza Hut terminated the Asset Purchase Agreement and stated that Lundy Enterprises's temporary license to operate Pizza Hut restaurants was immediately revoked. As a result, Lundy Enterprises ceased operating the Pizza Hut located at 3500 Kabel Drive, and others, on January 4, 2011. Lundy Enterprises did not pay the January 2011 rent for 3500 Kabel Drive.

On January 7, 2011, Larry Lundy, as owner of Lundy Enterprises, sent an email to "Lundy Enterprises Employees, Landlords, Vendors, and Supporters" with the subject "Closure of Stores." The email stated:

> Please be advised that Pizza Hut, Inc. has filed a lawsuit against Lundy Enterprises, LLC and consequently has forced the closure of all of the stores, effective January 4, 2011. We are vigorously challenging this lawsuit and seeking to attain a fair and favorable

>solution. At this time, Lundy Enterprises, LLC respectfully requests
>your patience and understanding.[4]

On January 13, 2011, Harold Lundy, as President of Lundy Enterprises wrote to Lundy Enterprises's "Landlords" explaining that Pizza Hut "terminated all of [Lundy Enterprises's] franchise agreements, and that action forced the closures and eliminated all of [Lundy Enterprises's] cash flow." The letter also states that Lundy Enterprises "think[s] there may be a way to mitigate or even eliminate losses to you, our landlords", and that Lundy Enterprises is "actively seeking a solution that could reverse the damage done" to the landlords, and seeking their support. The letter requests that a response be sent through Vincent Liuzza, a management consultant professional. 5876 did not reply to Liuzza. Lynch claims that he attempted to contact Lundy Enterprises, but when those attempts proved futile, he contacted Pizza Hut to ascertain its plans regarding the continued operation of a Pizza Hut restaurant at 3500 Kabel Drive.

In February 2011, 5876 leased the parking lot of 3500 Kabel Drive to Hard Rock Construction for $850 per month on a month-to-month basis. On March 3, 2011, 5876 changed the locks on the property. On August 24, 2011, 5876 sent Lundy Enterprises a Notice of Non-Payment, formally placing it in default of the lease. Then, on February 1, 2012, 5876 entered into a lease

---

[4] 5876 filed a motion to strike this email and any reference to it from the record on summary judgment arguing that Lynch never received the email, there is no proof offered that it was sent to his email address, and that Harold Lundy's affidavit does not properly authenticate the document. (Doc. # 73). Lundy Enterprises contends that Lynch did receive the email because an email between Lynch's associates dated January 7, 2013, discusses what Lynch should do with respect to contacting Pizza Hut regarding its plans for the property. Lundy Enterprises also argues that Harold Lundy is qualified to authenticate the document because he had knowledge of the correspondence as president of Lundy Enterprise. The court finds that the document is adequately authenticated for the purposes of the motion. Further, whether Lynch received the email is a disputed fact that will be considered with all of the others. Therefore, the 5876's motion to strike is DENIED.

agreement with Divine Cakes.  On August 6, 2012, 5876 sent Lundy Enterprises a Notice to Terminate and Vacate.

On July 9, 2013, 5876 filed this action against Lundy Enterprises, Deshon, Burns, Harold W. Lundy, Larry Lundy and Marilyn Lundy alleging five claims: (1) breach of the lease against Lundy Enterprises; (2) bad faith, fraud and inaction and conspiracy against Lundy Enterprises, Larry Lundy, Harold Lundy, Deshon and Burns; (3) intentional and negligent misrepresentations against Lundy Enterprises, Larry Lundy, Harold Lundy, and Deshon and Burns on detrimental reliance; (4) strict liability against Lundy Enterprises; and, (5) rescission of the relatively null sale due to error and/or fraud against Deshon and Burns. The defendants filed motions to dismiss.  The court granted the motions as to the conspiracy claims and the tort-based fraud claims against all defendants, and the detrimental reliance claims against Deshon and Burns.  Thereafter, 5876 filed an amended complaint seeking monetary damages if rescission of the sale is impossible.   On June 11, 2015, 5876 settled its claims against Deshon and Burns.

5876 filed a motion for partial summary judgment seeking an order stating that Lundy Enterprises breached the lease and that 5876 is entitled to all damages, penalties, attorneys' fees and costs as specified in the terms and conditions of the lease.  5876 argues that there is no dispute that Lundy Enterprises breached the lease by abandoning the property on January 4, 2011, which is demonstrated by its failure to pay rent on the property since January 2011, property taxes for 2011, 2012 or 2013, and any public utilities since January 2011, and its failure to maintain the required insurance coverage.  Lundy Enterprises argues that it is entitled to summary judgment because it did not abandon the property, rather 5876 illegally evicted Lundy Enterprises from the property.  Lundy Enterprises argues that its letters to the landlords dated January 7 and 13, 2011, demonstrate that it

7

did not intend to abandon the property, and that 5876 failed to follow the procedure outlined in the lease or Louisiana law in evicting Lundy Enterprises from the property.[5]

## ANALYSIS

### I.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986).  The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Techs., Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson, 106 S.Ct. at 2510).

If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celeotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The non-movant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla

---

[5] 5876 argues that Lundy Enterprises did not specifically plead the defense of wrongful eviction in its Answer and should be prevented from asserting it.  Lundy Enterprises points out that a wrongful eviction affirmative defense is encompassed within affirmative defenses numbers nine, thirteen, sixteen, and twenty-one asserted in the Answer.  The court finds that Lundy Enterprises's wrongful eviction claim is supported by affirmative defense nine which states: "Some or all of the claims asserted in Plaintiff's complaint against Lundy Enterprises . . . are precluded by statute, regulation, or any applicable agreements. . .".

of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

## II. Interpreting a Lease

Under Louisiana law, "the lease contract itself is the law between the parties; it defines their respective rights and obligations so long as the agreement does not affect the rights of others and is not contrary to the public good." Carriere v. Bank of La., 702 So.2d 648, 666 (La. 1996). In Lobell v. Rosenberg, - - - So.3d - - -, 2015 WL 5972548 (La. 10/14/15). The Supreme Court of Louisiana explained contract interpretation with respect to a lease as follows:

> In interpreting the lease, we begin from the well-settled premise that contracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. When a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. However, even when the language of the contract is clear, courts should refrain from construing the contract in such a manner as to lead to absurd consequences. The words of a contract must be given their generally prevailing meaning. Moreover, a contract provision that is susceptible to different meanings must be interpreted with a meaning that renders the provision effective, and not with one that renders it ineffective. Each provision in a contract must be interpreted in light

>of the other provisions so that each is given the meaning suggested by the contract as a whole.

(internal quotations and citations omitted).

### III. Peaceful Possession and Abandonment

The central dispute in these cross-motions for partial summary judgment is whether Lundy Enterprises abandoned the property or 5876 illegally evicted Lundy Enterprises.

Under Article 2682 of the Louisiana Civil Code, a lessor is bound "[t]o protect the lessee's peaceful possession for the duration of the lease." A lessor who fails to meet his obligation to protect the lessee's peaceful possession of the property is generally liable for any resulting damages. Duhon v. Briley, 117 So.3d 253, 258 (La. Ct. App. 2013). However, a lessor is relieved of that obligation if he follows the eviction procedures set forth in Articles 4701-4735 of the Louisiana Code of Civil Procedure. Id.

Article 4701 of the Louisiana Code of Civil Procedure provides:

>When a lessee's right of occupancy has ceased because of the termination of the lease by expiration of its term, action by the lessor, nonpayment of rent, or for any other reason, and the lessor wishes to obtain possession of the premises, the lessor or his agent shall cause written notice to vacate the premises to be delivered to the lessee. The notice shall allow the lessee not less than five days from the date of its delivery to vacate the leased premises.
>
>If the lease has no definite term, the notice required by law for its termination shall be considered as a notice to vacate under this Article. If the lease has a definite term, notice to vacate may be given not more than thirty days before the expiration of the term.
>
>A lessee may waive the notice requirements of this Article by written waiver contained in the lease, in which case, upon termination of the lessee's right of occupancy for any reason, the lessor or his agent may immediately institute eviction proceedings in accordance with Chapter 2 of Title XI of the Louisiana Code of Civil Procedure.

Further, the lease includes the following relevant provisions pertaining to the lessee's default, notice and the application of Louisiana lease and eviction law:

> 7.1 **Default**. Each of the following events is a default and a breach of this Lease by Lessee:
>
> \* \* \*
>
> 7.1.4 If Lessee fails to pay Lessor any Minimum Rental or Additional Charges when it becomes due and payable and fails to make such payment within ten (10) days after written notice thereof by Lessor to Lessee; or
>
> 7.1.5 If Lessee fails to perform any of its non-monetary obligations under this Lease and such non-performance continues for a period within which performance is required to be made by specific provision of this Lease or, if no such period is provided, for a period of thirty (30) days after written notice thereof is delivered by Lessor to Lessee or, if such performance cannot be reasonably completed within such thirty (30) day period, such longer period of time as may be needed by Lessee if Lessee has in good faith commenced such performance within such thirty (30) day period.
>
> In the event of a default under his Section 7.1, Lessor shall have such remedies as are provided under this Lease and/or under applicable law.

The lease provided the following remedies for default by the lessee:

> 7.3 **Lessor's Remedies**. If Lessee is in default under this Lease, Lessor may, at its option, in addition to such other remedies as may be available under applicable law:
>
> 7.3.1 Terminate this Lease and Lessee's right of possession, retake possession judicially for Lessor's account and recover Minimum Rental and Additional Charges previously accrued, and seek such damages as may be available under applicable Louisiana law;
>
> 7.3.2 Maintain this Lease in full force and effect, and hold the Lessee liable for all Minimum Rental and Additional Charges payable under this Lease monthly as it accrues, which shall

>> be offset by any rent that Lessor collects through any reletting of the Premises; or
>
> 7.3.3 Seek specific performance of the particular obligation forming the basis of Lessee's default.

It is undisputed that 5876 did not follow the procedures set forth in article 4701 or the lease prior to leasing the property to Hard Rock in February 2011. However, a lessor is exempt "from liability for failing to comply with the eviction procedure before taking possession if the lessee unjustifiably abandons the leased premises." Duhon, 117 So.3d at 258 (citing Grigis v. Macaluso Realty Co., Inc., 778 So.2d 1210, 1213 (La. Ct. App. 2001)). "'Abandonment of a leased premises requires voluntary relinquishment of the premises by the lessee with the intent to terminate without vesting ownership in another.'" Id. (quoting Grigis, 778 So.2d at 1213). If the lessor is not justified in believing that the leased premises has been abandoned by the lessee, using "self-help to retake the property constitutes a trespass and wrongful seizure of the lessee's property." Id. (citing Grigis, 778 So.2d at 1213). Whether a leased premises has been abandoned is a factual issue. Id. (citing Grigis, 778 So.2d at 1213).

5876 argues that it is clear that Lundy Enterprises abandoned the property. 5876 contends that Lundy Enterprises's intent to abandon the property is demonstrated by Lundy Enterprises's failure to perform its obligations under the lease, including failure to pay rent, utilities, and taxes, and failure to maintain the property and required insurance coverage. 5876 also points to Lundy Enterprises's: loss of its licenses to operate Pizza Hut restaurants; closure of all of its Pizza Hut restaurants simultaneously, without prior notice to 5876; confirmation that it did not have any "cash flow," which is necessary to pay rent, utilities, insurance premiums and maintenance expenses; and failure to return to the property or ask to do so, and failing to respond to Lynch's attempts to

communicate with Lundy Enterprises in January and February 2011. 5876 contends that Lundy Enterprises's intent to abandon the property is evident in a January 13, 2011, email from Harold Lundy to Michael Lundy in which Harold Lundy states that Lundy Enterprises is "[w]orking with Liuzza about sending out letters to landlords to hold them at bay for a while", and canceling utility services to obtain the deposits. 5876 characterizes its leasing the property to Hard Rock as mitigating its damages, and contends that it changed the locks out of necessity to maintain the property.

Lundy Enterprises contends that it did not intend to abandon the property. Lundy Enterprises points out that it had equipment on the property, and it has no obligation under the lease to operate any business on the premise. Section 5.1 of the lease provides: "Notwithstanding anything in this Lease to the contrary, Lessee shall have no obligation to actively conduct business operations on the Premises, and the failure of Lessee to actively conduct business operations on the Premises shall not, in itself, constitute an abandonment of the Premises." Further, Harold Lundy declares in his affidavit that Lundy Enterprises did not intend to abandon the premises, which was obvious from Larry Lundy's January 7, 2011, email to the landlords in which he states that Lundy Enterprises is "seeking to attain a fair and favorable solution", and requests the landlords' "patience and understanding"; and, Harold Lundy's January 13, 2011, letter to the landlords explaining that "there may be a way to mitigate or even eliminate losses to you, our landlords", and that Lundy Enterprises is "actively seeking a solution that could reverse the damage done" to the landlords, and seeking their support.

5876 has presented facts that demonstrate that Lundy Enterprises intended to abandon the premises. However, Lundy Enterprises, through Harold Lundy's affidavit, has declared that it did

13

not intend to abandon the premises and has shown facts to support the assertion. Because determining whether a lessee intends to abandon a leased premises is a factual question and there are facts supporting each position, testimony is necessary to determine whether Lundy Enterprises intended to abandon the property and whether Lynch was justified in believing that Lundy Enterprises intended to abandon it. Thus, the issue cannot be resolved on summary judgment, and the parties' cross-motions for partial summary judgment are DENIED.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Partial Summary Judgment for Breach of Lease Against Defendant, Lundy Enterprises, LLC, filed by plaintiff, 5876 57th Drive, LLC (Doc. #63), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion to Strike filed by plaintiff, 5876 57th Drive, LLC (Doc. #73), is **DENIED**.

**IT IS FURTHER ORDERED** that the Motion for Partial Summary Judgment filed by defendant, Lundy Enterprises, LLC (Doc. #81), is **DENIED**.

New Orleans, Louisiana, this  29th  day of January, 2016.

_____
**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**